THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
CAROLYN FEARS, DONNA GIBBS, CAROL :
McILVAINE (a.k.a. CAROL ALSTON), SHARON :
SIMON, and TIFFANY CONNOR, on their own behalf :
and on behalf of a class of similarly situated persons, :
 :
                         Plaintiffs, :
 :
                  -against- : 02 Civ. 4911 (HB)
 :
WILHELMINA MODEL AGENCY, INC., FORD : **OPINION & ORDER**
MODELS, INC., (f.k.a. FORD MODEL AGENCY), :
GERARD W. FORD, ELITE MODEL :
MANAGEMENT, INC., CLICK MODEL :
MANAGEMENT, INC., NEXT MANAGEMENT CORP., :
MFME MODEL MANAGEMENT CO., LTD. :
(a.k.a. COMPANY MANAGEMENT), BOSS MODELS, INC., :
ZOLI MANAGEMENT, INC., QUE MODEL :
MANAGEMENT, DNA MODEL MANAGEMENT, LLC, :
IMAGES MANAGEMENT, IMG MODELS, INC., and :
MODEL MANAGEMENT CORPORATION :
(f.k.a. INTERNATIONAL MODEL MANAGERS :
ASSOCIATION, INC.), :
 :
                        Defendants. :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

       On May 19, 2005, Plaintiffs, by and through their counsel of record, moved this Court, pursuant to Rule 6.3 of the Local Civil Rules of the S.D.N.Y ("Rule 6.3"), to reconsider its May 5, 2005 Order and Opinion. See Fears v. Wilhelmina Model Agency, Inc., No. 02 Civ. 4911, 2005 WL 1041134 (S.D.N.Y. May 5, 2005) ("Settlement Approval Order"). For the reasons set forth below, Plaintiffs' motion is GRANTED-in-part and DENIED-in-part.

## I. STANDARD OF REVIEW

       Rule 6.3 requires the party seeking reconsideration to "set [ ] forth concisely the matters or controlling decisions which counsel believes the court has overlooked" and "that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (citing to Rule 6.3); see Tamayo v. City of New York, No. 02 Civ. 8030, 2004 WL 725836, at *3 (S.D.N.Y. Mar. 31, 2004) (Baer, J.). The standard for

granting a motion for reconsideration is strict, id., however, a court may grant a motion for reconsideration "to correct a clear error or prevent manifest injustice." Doe v. New York City Dep't of Soc. Servs., 709 F.2d 782, 789 (2d Cir. 1983) (quotation marks and citation omitted); see also U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd., 182 F.R.D. 97, 100 (S.D.N.Y. 1998) ("Local Civil Rule 6.3 provides the Court with an opportunity to correct manifest errors of law or fact, hear newly discovered evidence, consider a change in the applicable law or prevent manifest injustice.").

## II. TIMELINESS

Motions for reconsideration "shall be served within ten (10) days after the docketing of the court's determination of the original motion" and "[n]o affidavits shall be filed by any party unless directed by the court." Rule 6.3. If the motion for reconsideration is filed "after the ten-day window permitted under Local Rule 6.3 . . . Plaintiffs' motion could be denied on this basis alone." Am. Hotel Intern. Group Inc. v. OneBeacon Ins. Co., No. 01 Civ. 654, 2005 WL 1176122, at *2 (S.D.N.Y. May 18, 2005); see also, Gibson v. Wise, 331 F. Supp. 2d 168, 169 (E.D.N.Y. 2004) (denying motion for reconsideration as untimely); Siemans Westinghouse Power Corp. v. Dick Corp., 219 F.R.D. 552, 554 (S.D.N.Y. 2004) (same); Snall v. City of New York, No. 97 Civ. 5204, 1999 WL 1129054, at *3 - 4 (E.D.N.Y. Oct. 19, 1999) (same).

Here, Plaintiffs' motion for reconsideration was both untimely filed and accompanied by four volumes of affidavits and exhibits estimated at over one thousand pages. The Settlement Approval Order was signed, docketed, and entered on May 5, 2005. Excluding weekends and holidays, that provided Plaintiffs' until May 19, 2005 to move for reconsideration. However, Plaintiffs' counsel waited until May 20, 2005 to move for reconsideration. Further, while the inclusion of affidavits is not fatal to Plaintiffs' motion, they will not be considered in support of the motion.

## III. DISCUSSION

Overlooking the motion's procedural deficiencies in the interest of deciding matters on their merits, as directed by the Federal Rules, Plaintiffs raised a host of issues in their motion, several of which are arguably meritorious and, at least, worthy of comment, including: (A) the damage award and prejudgment interest; (B) award of attorneys' fees; (C) application of the cy pres doctrine; and, (D) incentive awards. The balance have been reviewed and found not deserving of further comment.

## A. Treble Damages and Prejudgment Interest

Plaintiffs' primary contention is that the Court's decision to award single, instead of treble, damages and failure to award prejudgment interest was a fundamental error. However, Plaintiffs' contentions are belied by the terms of the Settlement Agreement and law in the Second Circuit.

In December 2004, the parties to the instant action agreed to, and submitted, the proposed settlement agreement for Court approval pursuant to Rule 23 of the Federal Rules of Civil Procedure. A settlement agreement is akin to any other contract. Bank of N.Y. v. Amoco Oil Co., 35 F.3d 643, 661 (2d Cir. 1994). Consequently, "because class settlements are contracts, courts do not generally have the authority to modify them." Dashingo v. Caribbean Cruises, Ltd., 312 F. Supp. 2d 440, 446 (S.D.N.Y. 2004). The Second Circuit has advised that because the "compass of a settlement agreement must be found within its four corners," Scottish Air Int'l, Inc. v. British Caledonian Group, PLC, 81 F.3d 1224, 1230 (2d Cir. 1996), a district court "should approve or disapprove a proposed agreement as it is placed before him and should not take it upon himself to modify its terms." In re Agent Orange Prod. Liab. Litig., 821 F.2d 139, 144 (2d Cir. 1987) (citation omitted); see also Daigle v. West, 225 F. Supp. 2d 236, 245 (2d Cir. 2002) ("since the terms of the settlement agreement are clear and unambiguous, this court should not look beyond the four corners of the agreement itself"); Huertas v. East River Hous. Corp., 993 F.2d 1263, 1266 (2d Cir. 1993) ("courts should not go beyond the terms of the agreement when interpreting it"); Suarez v. Ward, 896 F.2d 28, 30-1 (2d Cir. 1990) ("if the language of a settlement agreement is unambiguous, its meaning must be discerned within the four corners of the agreement").

There are, however, limited circumstances in which a district court is authorized to impose or amend terms of a settlement agreement. For example, a court may alter or impose terms to allocate Settlement proceeds to class members equitably, Dashingo, 312 F. Supp. 2d at 446 - 7, modify benefit allocation if the plan's formula would lead to an inequitable result, Beecher v. Able, 575 F.2d 1010, 1016 (2d Cir. 1978), amend the agreement when the terms were not the result of negotiations between the parties, id., and to determine reasonable attorneys' fees, Jones v. Amalgamated Warbasse Houses, Inc., 721 F.2d 881, 885 (2d Cir. 1983).

Here, the Settlement Agreement lacks any mention of either treble damages or

prejudgment interest.[1] The thirty-page agreement is noticeably silent as to damages, treble or otherwise. As such, the Court did not insert treble damages or prejudgment interest into the four corners of the Settlement Agreement and it would have been wrong to do so. See <u>Daigle</u>, 225 F. Supp. 2d at 245. Plaintiffs fail even to allege that the allocation formula leads to an inequitable result, and joins in the thought that the Settlement Agreement was the result of hard fought negotiations between sophisticated parties. According to the Plaintiffs' characterization of the negotiations:

> Each settlement was negotiated extensively and at arm's length by highly experienced and qualified counsel, with a full knowledge of the facts of the case, who were therefore uniquely situated to assess the relative strengths and weaknesses of their respective positions. . . .

(Pl. Mem. of Points and Auth. in Sup. of Final App. Of Settlements and Prop. Alloc., at 10).

Accordingly, as none of the limited exceptions are applicable and the Court having allocated the settlement funds in accordance with the express terms of the Settlement Agreement, that branch of the motion seeking the inclusion of either treble damages or prejudgment interest is DENIED.

---

[1] Upon a close reading, neither the word "treble" nor "triple" is utilized within the Settlement Agreement and the word "interest" appears 14 times but never in the context of prejudgment interest: "the settlement set forth in this Agreement confers substantial benefits upon and is in the best interests of the Class" (Settlement Agreement, § III), "plaintiffs and the Class have concluded that the terms and conditions of this Agreement are . . . [in] their best interests" (Settlement Agreement, § III), "'Released Persons' means . . . any Person or entity in which any Released Person has or had a controlling interest" (Settlement Agreement, ¶ A.14), "the Escrow Agent shall invest the Settlement Fund . . . in U.S. Treasuries . . . and/or in an interest bearing account insured by the FDIC" (Settlement Agreement, ¶ B.12), "The Notice and Administration Fund shall . . . earn interest . . . if practicable" (Settlement Agreement, ¶ B.16), "[the Settlement Fund shall be applied as follows:] to pay the Plaintiffs' Counsel attorneys' fees and expenses with interest thereon" (Settlement Agreement, ¶ D.1(c)), "such [tax] returns shall . . . reflect that all taxes (including any interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund" (Settlement Agreement, ¶ D.6), "all taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund . . . shall be paid out of the Settlement Fund" (Settlement Agreement, ¶ D.7), "the term 'Settlement Fund' includes both the Settlement Fund and the Notice and Administration Fund and all interest earned thereon" (Settlement Agreement, ¶ D.7), "Plaintiffs' Settlement Counsel may submit an application . . . for distribution from the Settlement Fund for: . . . an award of attorneys' fees . . . [and] any interest on such attorneys' fees and expenses" (Settlement Agreement, ¶ E.1), "in the event that the settlement fails . . . and in the event that the Fee and Expense Award has been paid to any extent, then Plaintiffs' Counsel shall . . . refund to the Settlement Fund, the fees and expenses previously paid to them from the Settlement Fund, plus interest thereon" (Settlement Agreement, ¶ E.3), "without limitation, each such law firm . . . agree[s] that the Court may . . . issue orders, including . . . appropriate findings of or sanctions for contempt, against them or any of them should such law firm fail to timely repay fees, expenses and interest pursuant to ¶ E.3 of this Agreement" (Settlement Agreement, ¶ E.3), "in the event the Agreement shall terminate or shall not become effective . . . . the Settlement Fund (including accrued interest), plus any amount then remaining in the Notice and Administration Fund (including accrued interest) less any taxes paid . . . shall be refunded by the Escrow Agent to the Settling Defendant(s)" (Settlement Agreement, ¶ F.3), "no order of the Court or modification or reversal on appeal of any order of the Court concerning the amount of attorneys' fees, expenses and interest awarded by the Court to Plaintiff's Counsel

## B. Attorneys' Fees

The law in the Second Circuit is unequivocal; attorneys' fees, "whether calculated pursuant to the lodestar or the percentage method . . . may not exceed what is 'reasonable' under the circumstances" and the determination of "reasonableness" is within the sound discretion of the district court. Goldberger v. Integrated Res., Inc., 209 F.3d 43, 47 (2d Cir. 2000); In re Interpublic Sec. Litig., 02 Civ. 6527, 2004 WL 2397190, at *10 (S.D.N.Y. Oct. 26, 2004) (same); In re Worldcom, Inc. Erisa Litig., 02 Civ. 4816, 2004 WL 2338151, at *10 (S.D.N.Y. Oct. 18, 2004) (same); In re Austrian and German Bank Holocaust Litig., No. 98 Civ. 3938, 2003 WL 402795, at *5 (S.D.N.Y. Feb. 21, 2003) (same); In re Sterling Foster & Co., Inc., Sec. Litig., 238 F. Supp. 2d 480, 486 (E.D.N.Y. 2002) (same); In re Twinlab Corp. Sec. Litig., 187 F. Supp. 2d 80, 84 (E.D.N.Y. 2002) (same).

While Plaintiffs' counsel objects to this Court's attorneys' fee award of 17.2% of the entire fund, they failed to demonstrate any abuse of discretion, or that the Court overlooked any matters or controlling decisions that may have resulted in a different outcome. Indeed, an award of this nature was made in any number of class action cases.[2] As such, the Plaintiffs' motion to reconsider the Court's award of attorneys' fees is DENIED.

## C. Cy Pres Doctrine

Plaintiffs' maintain that the Settlement Allocation Order incorrectly applied the cy pres doctrine and resulted in the misapplication of the relevant law and facts. (Pl. Mot. to Reconsid. at 8.) However, Plaintiffs' argument is belied by the facts of this case and contravened by well-established law.

Pursuant to the express terms of the Settlement Agreement, an agreement by the way in which the Court had no role, I was explicitly authorized to distribute any excess funds in any manner it saw fit:

---

shall constitute grounds for cancellation or termination of this Agreement" (Settlement Agreement, ¶ F.4).
[2] See e.g., In re Interpublic Sec. Litig., No. 02 Civ. 6527, 2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004) (setting the fee award at 12% of the Gross Settlement Fund distributed in stock and cash, or $96.4 million, where plaintiffs' counsel had sought 17%); In re Visa Check/Mastermoney Antitrust Litig., 297 F.Supp.2d 503 (E.D.N.Y.2003) (setting fee award at 6.5% of the "Net Settlement Funds," or $220.2 million, where plaintiffs' counsel sought 18% or $609 million); In re Fine Host Corp. Sec. Litig., No. 97 Civ. 2619, 2000 WL 33116538, at *6 (D.Conn. Nov. 8, 2000) (setting fee award at 17.5% of the settlement fund, or $3,106,250, million where plaintiffs' counsel sought 33.3% or $5,916,666.67).

> If the sum of the Total Recognized Losses of all Authorized Claimants who submit valid and timely proof of claim forms is less than the amount of the Net Settlement Fund, then <u>the Court shall, in its discretion</u>, determine the disposition of the amount representing the differences between the two figures, after hearing the views of the parties hereto as to such disposition.

Settlement Agreement, ¶ D.2.(b)(4) (emphasis added).

In addition to the plain language of the Settlement Agreement, there is also Plaintiffs' counsel's correspondence with this Court. While Plaintiffs' counsel complains about this Court's decision to distribute funds to charitable organizations, Plaintiffs' counsel gave at least tacit approval to the distribution scheme by proposing charitable organizations of his own. In particular, on March 31, 2005, and again on April 6, 2005, Lead Plaintiffs' Counsel submitted via fax proposed charitable organizations that "are of particular relevance to the mental and physical health concerns of the members of the plaintiff class," including "the Center for Women's Health, the Center for Women's Mental Health, the Division on Substance Abuse, the Eating Disorders Clinic" and "the Legal Aid Society [which] provides programs and services that are also of significant potential value to the members of the Class." (Ltr. from Andrew Hayes, Att'y for Pl. to Judge Baer, dated Mar. 31, 2005; Ltr. from Andrew Hayes, Att'y for Pl. to Judge Baer, dated Apr. 6, 2005). Indeed, it should also be noted that Plaintiffs' recommendations were made without reservation and without any statement in opposition to such a distribution. Ultimately, while Plaintiffs' may disagree with the Court's allocation, they have failed to demonstrate any abuse of discretion, or that the Court overlooked any matters or controlling decisions that would result in a different outcome.

Here, the Settlement Approval Order strictly adhered to the Second Circuit's decision in <u>Agent Orange Prod. Liab. Litig.</u>, 818 F.2d 179, 185 (2d Cir. 1987), and the terms of the Settlement Agreement which "require the Court to distribute any residual or unclaimed funds." <u>Fears</u>, 2005 WL 1041134, at *10. The Court allocated excess or unclaimed funds to specified charities only after the charities were thoroughly vetted and agreed, for the most part, "to waive any and all administrative costs," and "where appropriate," in each case to the inclusion of "broader outreach program[s] aimed at reaching more women." <u>Fears</u>, 2005 WL 1041134, at *12. Moreover, and pursuant to the requirements articulated by the Second Circuit in <u>Agent Orange</u>, the Court retained jurisdiction over the funds, supervised the distribution, required an

6

annual report as to the use of the funds, and staggered the distribution of funds so as to ensure compliance with the terms of the Settlement Approval Order and avoid any impermissible delegation of judicial responsibility. Id. at *18 – 24.³ Accordingly, it is clear that the cy pres remedy fashioned by this Court was not an abuse of discretion. The allocation was reached only after the Court carefully weighed all of the considerations and tailored its remedy to reflect the intent of the parties regarding the unclaimed funds. This aspect too must be DENIED.

### D. Incentive Awards

This Court approved the incentive awards as provided for in the Settlement Agreement and detailed in the Settlement Approval Order. (Settlement Approval Order, at 5 – 6).

## IV. CONCLUSION

For the aforementioned reasons, Plaintiffs' motion to reconsider the allocation of Settlement funds, attorneys' fee award, and application of the cy pres doctrine, is DENIED. Plaintiffs' motion for a clarification as to whether incentive awards were in fact awarded to the class representatives is GRANTED and the Court APPROVED incentive awards to class representatives for the reasons set forth in the Settlement Approval Order (see Settlement Approval Order, at 5 – 6).

The Clerk of the Court is instructed to close this motion.

**IT IS SO ORDERED**

New York, New York
June 0, 2005

_____
U.S.D.J.

---

³ See Agent Orange, 818 F.2d at 185 ("there is no principle of law authorizing such a broad delegation of judicial authority to private parties. We perceive no assurance that the self-governing and self-perpetuating board of directors of the class assistance foundation, or any other such body that might be devised by the court, will possess the independent, disinterested judgment required to allocate limited funds to benefit the class as a whole.") (citation omitted).